IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

TIMOTHY BAIRD,              )
                            )
        Plaintiff,          )
                            )
                            )   CIV-12-1146-D
v.                          )
                            )
CAROLYN W. COLVIN,          )
  Acting Commissioner of Social )
  Security Administration,  )
                            )
        Defendant.          )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

In October 2009, Plaintiff filed applications seeking disability insurance and

supplemental security income benefits. He alleged that he became disabled on July 21, 1997. (TR 121, 128). Plaintiff was 33 years old at the time he filed his applications, and he had an eleventh grade education. (TR 145). He worked part-time for approximately three years until February 2005 as an office cleaner in his father's insurance agency, and his earnings records show he had very little earnings. (TR 131-132, 141, 149, 155). He also worked previously as a security guard for approximately six months in 1996 and 1997. (TR 155). Plaintiff alleged he was disabled due to bipolar disorder, depression, post-traumatic stress disorder, obsessive-compulsive disorder ("OCD"), anxiety, panic attacks, and allergies. (TR 140). Plaintiff stated that he had difficulty with time management and getting along with authority figures, that he had been terminated from "too many" previous jobs, and that he could not "get [and] keep a job." (TR 164, 168, 169).

In May 2010, Plaintiff described his usual daily activities, medications, and subjectively assessed his functional abilities. (TR 163-178). In June 2010, Plaintiff's father provided a statement concerning Plaintiff's usual daily activities and functional abilities. (TR 171-178).

Plaintiff's former treating psychiatrist, Dr. McKnight, submitted a letter stating that she treated Plaintiff on a weekly basis in 2003 and 2004 with therapy and medication management for "severe" OCD. (TR 333). Dr. McKnight stated that Plaintiff's prognosis was "poor" and he was "resistant to treatment."[1] (TR 333).

---

[1]Plaintiff first submitted this letter to the Appeals Council, and the Appeals Council considered the evidence. Therefore, the letter is part of the record in this action.

Plaintiff was treated with medications by Dr. Weber, a psychiatrist, for OCD between February 2008 and November 2010. (TR 203-209, 313-317, 320-324). In Dr. Weber's office notes, Dr. Weber notes Plaintiff self-reported he had been treated by a psychiatrist since the second grade. Dr. Weber's notes reflect findings of depression, obsessive, repetitive, and paranoid symptoms, as well as "difficulty in concentration." (TR 209, 313, 314). He described Plaintiff as "an over worrier [who] seems to be out of step with the world in general, more particularly with his lawyer-brother, his parents, and his family." (TR 205).

Plaintiff began treatment with Dr. Rahhal in December 2010 after Dr. Weber retired. Dr. Rahhal diagnosed Plaintiff with OCD and bipolar disorder and continued his medications. (TR 327-329). Dr. Rahhal's office notes indicate he saw Plaintiff on three occasions, in December 2010, January 2011, and February 2011. (TR 325-329).

Dr. Rahhal provided a medical source statement in May 2011 concerning Plaintiff's diagnoses, treatment prognosis, and functional abilities. (TR 330-332). Dr. Rahhal opined in this statement that Plaintiff was diagnosed with OCD and Bipolar II disorder causing "severe" OCD behaviors and thoughts, "severe" mood swings, anxiety affecting his ability to focus and concentrate, and "poor concentration and focus." (TR 330). Dr. Rahhal opined that Plaintiff's impairments resulted in marked restrictions of daily living activities, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and repeated episodes of decompensation of extended duration. (TR 331). Dr. Rahhal stated that in his professional opinion Plaintiff could not function in a work-like setting on a sustained basis. (TR 331).

3

Plaintiff underwent a consultative psychological evaluation conducted by Dr. Green, a psychologist, in August 2010. (TR 274-278). Dr. Green noted that Plaintiff had not attended the first scheduled evaluation and reported he had gotten lost. Dr. Green noted that in a mental status examination Plaintiff exhibited a "bland" affect, passive-aggressive and blaming behavior, obsessive preoccupations with conversations with other people, security, and safety, probable low average intellectual functioning, difficulty retaining new learning, adequate concentration, adequate judgment, and the ability to retain and carry out simple, detailed, and more complex instructions. Dr. Green's diagnostic assessment was dysthymic disorder, anxiety disorder, and personality disorder with narcissistic, passive-aggressive, and dependent features. (TR 277).

An agency medical consultant and psychologist, Dr. Millican-Wynn, stated in August 2010 that she had reviewed the record to that date and found Plaintiff was capable of performing simple and some complex tasks, relating to others on a superficial work basis, and adapting to a work situation. (TR 281). Dr. Millican-Wynn also stated that there was insufficient evidence of a medically determinable impairment prior to June 30, 1999. (TR 283-295). Dr. Millican-Wynn completed a psychiatric review technique form ("PRT") in which the psychologist opined that Plaintiff's mental impairments had resulted in moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace, but no restrictions of activities of daily living and no episodes of decompensation of extended duration. (TR 297-309).

At a hearing conducted in May 2011 before Administrative Law Judge Gordon

("ALJ"), Plaintiff testified that he had always lived with his parents except for two brief periods of time, he completed the eleventh grade, and he had not been employed since 2005. He stated he could not work because he was not quick enough, he could not get to work on time, and his medications made him less "alert" and "speedy." (TR 40). He was taking six medications, including Seroquel SR® for bipolar disorder, fluvoxamine for OCD, and cholesterol and allergy medications. (TR 40-41).

Plaintiff testified he had no friends, tended to isolate himself from his family, did not drive or shop, had trouble being on time for previous jobs, had trouble completing tasks, and struggled with energy due to his medications. He stated that if he tried cutting back on his medications in order to increase his energy level then he had an increased negative attitude, increased anger, and increased paranoia. (TR 48).

Plaintiff's father testified that Plaintiff had life-long problems with repetitive behavior, tangential thinking, mood swings, and argumentative behavior. Plaintiff had no friends, very little activities, had trouble concentrating and completing tasks, and did not have regular sleep schedules. A vocational expert ("VE") also testified.

The ALJ issued a decision on June 8, 2011. (TR 14-26). In this decision, the ALJ found that Plaintiff met the insured status requirements for Title II benefits only through June 30, 1999. (TR 16). Following the agency's well-established sequential evaluation procedure, the ALJ found that Plaintiff had not engaged in substantial gainful activity "since July 21, 1997, the alleged onset date," and that Plaintiff had impairments of affective mood disorders and anxiety-related disorder. (TR 16).

Considering the requirements of the agency's listings of impairments deemed disabling, especially listings 12.04, 12.06, and 12.08, the ALJ found that Plaintiff impairments were not *per se* disabling as they had resulted in "no" restrictions in daily living activities, "moderate" difficulties in social functioning, "moderate" difficulties in concentration, persistence, or pace, and "no" episodes of decompensation of extended duration. (TR 17).

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels except that he could only perform jobs requiring "simple and some complex tasks and jobs that allowed him to "relate to others on a superficial work basis including the general public." (TR 18). In connection with this finding, the ALJ gave Dr. Rahhal's medical source statement "very little weight" because it was "based on little treatment history, and is mainly conclusory . . . and is inconsistent with the medical documentation as a whole and the claimant's own testimony and daily activities . . . or his own treating notes." (TR 23-24).

The ALJ found that Plaintiff was "capable of performing [his] past relevant work as an office cleaner." (TR 24). Alternatively, at step five, the ALJ found that Plaintiff was capable of performing other jobs available in the economy, including the unskilled jobs of truck loader, night cleaner, and lens polisher grinder. (TR 25).

The Appeals Council declined to review the ALJ's decision. (TR 1-3). Therefore, the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The agency determined that Plaintiff's insured status for the purpose of disability insurance benefits expired on June 30, 1999. (TR 137, 179). Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that he was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on June 30, 1999. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

III. Step Four Finding

Plaintiff argues that the ALJ erred in finding Plaintiff was capable of performing his

7

previous job as an "office cleaner" (TR 24) after finding that this work did not constitute substantial gainful activity ("SGA"). (TR 16). The VE testified at the hearing that Plaintiff's past "wages have been low," suggesting that "he didn't meet SGA levels" for any of his previous jobs. (TR 56). Plaintiff testified that he worked for "a few hours" at his father's office doing "a few things here and there." (TR 38). The ALJ considered Plaintiff's earnings record and concluded, as an agency reviewer had previously, that Plaintiff had not engaged in SGA since his alleged disability onset date in 1997. (TR 16, 154). Thus, the ALJ erred in relying on the office cleaner position as past relevant work and erred in finding at step four that Plaintiff was not disabled because he was capable of performing this previous job. However, because the ALJ reached step five of the decisionmaking procedure and found that Plaintiff was capable of performing other work available in the national economy, the ALJ's step four error is harmless.

IV. <u>Evaluation of Medical Evidence and Opinions</u>

Plaintiff next contends that the ALJ's decision is internally inconsistent. The ALJ stated in the decision that he gave "great weight" to the assessments of the state agency medical consultants and also stated that he gave "great weight to the claimant's treating and examining physician's [sic] assessments and opinions, except for Dr. Rahhal's Medical Evaluation dated May 2, 2011, as these are consistent with the medical documentation in its entirety." (TR 23, 24). When there are differences of opinion among the medical sources, the ALJ must explain the basis for adopting one and rejecting another, with reference to the factors governing the evaluation of medical-source opinions set out in 20 C.F.R.

8

§§404.1527(d)–(f), 416.927(d)–(f). There are no medical source statements in the record other than Dr. Rahhal's May 2011 statement and the statements of the agency medical consultants. Plaintiff does not indicate how the ALJ's decision is internally inconsistent as the ALJ addressed the medical source statements in the record and provided reasons for both giving Dr. Rahhal's statement "very little" weight and giving "great" weight to the statements by the agency medical consultants. There is no internal inconsistency in the ALJ's decision with respect to the medical source statements in the record.

Plaintiff contends that the ALJ's stated reasons for giving "very little" weight to Dr. Rahhal's medical source statement are not supported by the record. An ALJ must give controlling weight to a well-supported treating physician's opinion about the nature and severity of a claimant's impairments, so long as the opinion is consistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994).

The ALJ gave valid reasons for giving Dr. Rahhal's opinion little weight, including the short period of time that Plaintiff had been treated by Dr. Rahhal prior to the date of the opinion. The ALJ also reasoned that the opinion was not consistent with "the claimant's own testimony" and "with the medical evidence as a whole or his own treatment notes." (TR 23-24). Although the ALJ did not point to specific evidence in the record to support this latter rationale, the ALJ previously summarized in the decision the objective medical evidence, including the report of the consultative examiner, Dr. Green, Plaintiff's hearing testimony, and Dr. Rahhal's and Dr. Weber's office notes appearing in the record.

9

Dr. Weber's and Dr. Rahhal's office notes indicated Plaintiff exhibited some obsessive, paranoid, and depressive behaviors. Nevertheless, the notes did not reflect findings that were consistent with the extremely limited functional abilities set forth in Dr. Rahhal's medical source statement. Dr. Weber indicated Plaintiff was an excessive worrier but did not suggest that Plaintiff was unable to work. Dr. Rahhal's notes indicate that Plaintiff reported his medications were helping to control his symptoms and that Plaintiff's mental status examinations did not reflect severe mental limitations. (TR 325, 326, 329).

The ALJ also appropriately reasoned that Plaintiff's own testimony was not consistent with the findings in Dr. Rahhal's medical source statement of extremely limited functional abilities. Plaintiff described daily activities that included caring for the children of family members and that he had a generally good relationship with his family members. Even though he stated he had no friends, Plaintiff reported he performed chores, cooked, shopped for groceries and personal items, attended his medical appointments, and picked up his medications. He did not indicate that his social limitations were the result of his mental impairments. Rather, the social limitations appeared to be a matter of personal choice as he stated that he simply did not care to socialize. (TR 276). Where "[t]he ALJ provide[s] good reasons in his decision for the weight he gave to the [medical] sources' opinions," there is no error. Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir.2007) (citation omitted). Here, the ALJ provided valid reasons well supported by the evidence in the record for giving "very little" weight to Dr. Rahhal's medical source statement, and no error occurred in this respect.

Plaintiff points out that in his medical source statement Dr. Rahhal assigned Plaintiff

10

a current GAF[2] score of 50[3] and a "highest GAF in the past year" of 50. (TR 330). However, the ALJ expressly considered the GAF assessment in the decision. (TR 22). Moreover, "[s]tanding alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work." Lee v. Barnhart, 117 Fed.Appx. 674,678 (10th Cir. 2004)(unpublished op.). The ALJ's decision provides reasons for giving little weight to Dr. Rahhal's medical source statement, including the GAF assessment, and those reasons are supported by substantial evidence in the record.

V. Evaluation of Credibility

Plaintiff contends that there is not sufficient evidence in the record to support the ALJ's credibility determination. Specifically, Plaintiff contends that the ALJ did not affirmatively link specific evidence with his credibility finding. Plaintiff also contends that the ALJ erroneously reached an RFC finding before assessing Plaintiff's credibility.

At the fourth step of the evaluation process, the ALJ must determine whether the claimant retains the RFC to perform the requirements of all past relevant work. Bowman

---

[2]The diagnosis of mental impairments "requires a multiaxial evaluation" in which Axis V "refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning (GAF), which does not include physical limitations." Schwarz v. Barnhart, No. 02-6158, 2003 WL 21662103, at *3 fn. 1 (10th Cir. July 16, 2003)(unpublished op.)(citing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM IV)(4th ed. 1994), pp. 25-32). The GAF is a subjective rating on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed.2000) at 32.

[3]"A GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functioning, such as inability to keep a job." Pisciotta v. Astrue, 500 F.3d 1074, 1076 n. 1 (10th Cir. 2007)(quotation, brackets, and ellipsis omitted).

v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008)(quotations and citation omitted); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). RFC represents "the most [that the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about his symptom(s) and [their] functional effects." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 1 (1996).

"Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). But an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements" in determining a claimant's credibility. SSR 96-7p, 1996 WL 374186, at * 4 (1996). Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

The ALJ's decision reflects a lengthy discussion of the evidence in connection with the relevant step four findings. In the decision, the ALJ determined that Plaintiff's subjective statements were not entirely credible. The ALJ discussed and evaluated Plaintiff's statements in the record concerning his daily activities, his testimony, and his father's testimony. The ALJ then reasoned that although Plaintiff alleged disability beginning July 21, 1997, there were no mental health treatment records until January 2006 and that medical records showed he had past mental health medication management but "rarely had counseling

to deal with his mental health impairments." (TR 20, 24). The ALJ then pointed to specific medical evidence in the record, including the results of the mental status evaluation conducted in August 2011 by Dr. Green showing "adequate" concentration, "adequate" judgment, and "the ability to retain and carry out simple, detailed and more complex instructions as well as work at an adequate pace." (TR 24). These statements are well supported by the record and the report of Dr. Green's psychological assessment of Plaintiff.

The ALJ also pointed to Plaintiff's own testimony, which showed he was "clearly intelligent, articulate, and educated in speaking" but gave "weak and conclusory" testimony. (TR 23). The ALJ pointed out that Plaintiff described a variety of daily activities, including babysitting for family members' children. (TR 23). The ALJ discussed relevant evidence in reaching his conclusion on credibility, and there is no indication that the ALJ reached an RFC determination prior to evaluating Plaintiff's credibility. Moreover, the ALJ "clearly and affirmatively linked his adverse determination of [Plaintiff's] credibility to substantial record evidence . . . and [the Court's] limited scope of review precludes [the Court] from reweighing the evidence or substituting [its] judgment for that of the agency." Wall v. Astrue, 561 F.3d 1048, 1070 (10th Cir. 2009). No error occurred with respect to the well-supported credibility determination.

Plaintiff contends that the ALJ's evaluation of Plaintiff's father's testimony and written third-party Function Report was not adequate. The ALJ's decision reflects consideration of Plaintiff's father's testimony and written Function Report. Plaintiff's father testified that Plaintiff had no interest in social organizations, slept excessively, watched

13

television, and engaged in repetitive behaviors, could probably live alone, but could not work. The ALJ appropriately reasoned that the medical evidence in the record, including the reports of Dr. Green and the assessments of the agency medical consultants, provided objective medical evidence indicating Plaintiff had the ability to work despite his mental impairments and concluded that the third-party statements did not outweigh the medical record evidence. No error occurred in the ALJ's evaluation of the third-party statements and testimony.

VI. <u>Ability to Perform Sustained Work Activity</u>

Lastly, Plaintiff contends that the ALJ erred in failing to consider whether Plaintiff could perform sustained work activity. Ordinarily, the evaluation of disability is concerned with the capacity to perform "sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96–8p, 1996 WL 374184, at *2. The issue is whether the ALJ improperly failed to "discuss [Plaintiff's] ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)." SSR 96–8p, 1996 WL 374184, at *7 .

Plaintiff described only two previous positions, including an approximately six-month position as a security job and an approximately three-year, part-time position as an office cleaner. As Plaintiff suggests, a part-time job does not necessarily demonstrate an ability to sustain the mental demands of full-time work.

The ALJ found that Plaintiff was capable of performing work that involved only "simple and some complex tasks" and allowed him to work with others "on a superficial

14

work basis including the general public." (TR 18). The ALJ gave "great weight" to the RFC assessment of the agency medical consultant, Dr. Millican-Wynn, who reached the same conclusions with regard to Plaintiff's ability to work. (TR 281). The ALJ's decision reflects consideration of other medical evidence, particularly Dr. Green's reported findings in a consultative psychological evaluation of Plaintiff, and Plaintiff's testimony and statements in the record in reaching the conclusion that "[a]lthough the claimant has some work-related limitations the [ALJ] was not persuaded his impairments preclude him from engaging in all substantial gainful activity." (TR 23-24).

The ALJ did not specifically address Plaintiff's ability to sustain the mental demands of full-time work. However, the ALJ cited to evidence in the record that supported his RFC finding of an ability to perform work activity with certain limitations due to Plaintiff's mental impairments. There is substantial evidence in the record to support this finding, and the ALJ did not err in failing to specifically address the sustained work issue.

The VE testified concerning jobs that would be available for an individual with Plaintiff's RFC for work, and the VE's testimony provided substantial evidence to support the ALJ's step five nondisability determination. Accordingly, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits.

The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____October 3rd_____, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____13th_____ day of _____September_____, 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE